UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA RIVER WATCH,

Plaintiff,

v.

JOHN DONNELLY SWEENEY; POINT BUCKLER, LLC; POINT BUCKLER CLUB, LLC; DOES 1 through 10, inclusive,[1]

Defendants.

No. 2:16-cv-02972-KJM-KJN

ORDER

California River Watch, an environmental nonprofit, sues property developers for violating the Endangered Species Act by allegedly converting a critical endangered species habitat into a kite surfing and duck hunting haven. Defendant John Donnelly Sweeney owns the developed land; the corporate defendants manage the land. Defendants jointly move to dismiss the complaint. Mot., ECF No. 14. River Watch opposes. Opp'n, ECF No. 20. As discussed below, the court DENIES defendants' motion.

---

[1] If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

1

I. BACKGROUND

    A. Complaint

River Watch is a nonprofit dedicated to protecting, enhancing and restoring the state's waters, and it educates the public on environmental issues. Compl. ¶ 10, ECF No. 1. River Watch protests defendants' development of fifty-one acres of real property called Point Buckler Island on the western tip of Simmons Island in the Suisun Marsh (the "property"). Compl. ¶ 11. River Watch contends defendants' development violated the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1531 *et seq.*, which protects species and their natural ecosystems by prohibiting any "person" from committing a "take" as to any endangered species. ESA § 9(a)(1)(B). "Take" means "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or to attempt to [do so] . . . ." 16 U.S.C. § 1532(19). Harm or harassment includes modifying or degrading a habitat. 50 C.F.R. § 17.3. River Watch contends defendants committed an ESA "take" as to six endangered or threatened species of fish, bird and mammal ("the six species")[2] by converting critical habitat on the property into a diked recreational island, which in turn interfered with the six species' feeding, breeding and sheltering. Compl. ¶¶ 20-24, 29.

River Watch seeks an order declaring defendants violated ESA, an order requiring defendants to mitigate harm they caused the six species, an injunction mandating cooperation with resource agencies regarding any development activities that affect endangered and threatened species, and an injunction against any future "take" of these six species. Compl. ¶¶ 35-41.

    B. State Agency Involvement

In their motion, defendants point to the role state conservation agencies have played in curbing defendants' development and mandating remediation for past property damage. In September 2015, the State's Regional Water Quality Control Board ("Water Board")[3] issued a

---

[2] The six species are the Salt Marsh Harvest Mouse, the Delta Smelt, the California Ridgway's Rail, the Central Coast Steelhead Trout, the Green Sturgeon, and the Chinook Salmon. Compl. ¶ 20 A-F.

[3] The California Legislature created the Water Board in 1967 "to ensure the highest reasonable quality for waters of the State, while allocating those waters to achieve the optimum

cleanup and abatement order against Mr. Sweeney. *See* Water Board Order, Ex. 2 to Bazel Decl., ECF No. 14-4. The San Francisco Conservation and Development Commission ("Commission")[4] issued a cease-and-desist order against Mr. Sweeney in May 2016 after declaring his developments impermissible under the Suisun Marsh Preservation Act.[5] Commission Order, Ex. 7 to Bazel Decl., ECF No. 14-9. Mr. Sweeney continues to challenge both orders in state court. Mot. at 6.

These state agency orders required, among other things, restoration, mitigation and a monitoring plan that describes efforts Mr. Sweeney is taking to restore the water quality functions and values of the critical habitat and tidal marsh at Point Buckler to its pre-development state. Water Board Order at 15-16. The Commission also has required a "compensation proposal" that describes how the developers will minimize and mitigate damage to the existing wetlands and water site conditions and how developers will monitor and evaluate the mitigation's success. Commission Order at 1. Through the agency orders, Mr. Sweeney was enjoined from future unauthorized development or repairs. Water Board Order at 14; Commission Order at 1.

C. Motion to Dismiss

Defendants move to dismiss River Watch's complaint, arguing the state agency orders overlap with River Watch's requested relief to such a degree that the court must dismiss the complaint for lack of standing, mootness and ripeness as well as failure to join necessary

---

balance of beneficial uses. The joint authority of water allocation and water quality protection enables the Water Board to provide comprehensive protection for California's waters." *See* Water Board's Website, http://www.waterboards.ca.gov/sanfranciscobay/about_us/ (last visited Sept. 21, 2017).

[4] The Commission is a state planning and regulatory agency that was created in 1965 "to protect and enhance San Francisco Bay and to encourage the Bay's responsible and productive use for this and future generations." Commission Website, http://www.bcdc.ca.gov (last visited Sept. 21, 2017).

[5] The Suisun Marsh, near San Francisco Bay, includes more than ten percent of California's remaining wetland area and is a nationally renowned wildlife habitat. Recognizing the threat development poses to this unique wildlife resource, the California Legislature enacted the Suisun Marsh Preservation Act of 1974 to preserve and protect this area. *See* http://www.bcdc.ca.gov/plans/suisun_marsh_preservation_act.html (last visited Sept. 21, 2017).

3

1 parties. Alternatively, defendants argue the court should stay this case while the state
2 proceedings are pending. As discussed below, not one of these arguments prevails.

II. STANDING

Defendants argue River Watch has no plausible redressability left to obtain in this court because the two state agencies already have granted the injunctive relief River Watch seeks. Mot. at 9.

The plaintiff, as the party asserting federal subject matter jurisdiction, has the burden to prove standing to sue in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing requires a plaintiff to show three things: (1) An injury in fact; (2) defendants' challenged conduct caused the injury; and (3) a favorable decision would redress the injury. *Id.* at 560-61. The parties dispute the third element here, which requires plaintiff to show it is "likely," not "merely 'speculative,'" that a favorable decision would redress the injury. *Id.* (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 43 (1976)).

Defendants argue the state agency orders have already addressed River Watch's concerns by ordering Mr. Sweeney to restore his property to its pre-development condition and to cease future harm. Mot. at 8-10. This court's secondary grant of relief, defendants argue, would produce no "tangible, meaningful results in the real world." *Id.*

Defendants' argument is unpersuasive. The state orders address neither the federal statute nor the six species River Watch identifies in the complaint. Rather, the state orders declared defendants liable under state water quality law and required corresponding remediation. *See generally* Water Board Order; Commission Order. The orders reference ESA, but merely to warn defendants to not "take" endangered species during their mandated repair and clean-up activities. *See* Water Board Order at 14-15 ("This Order does not allow for the take, or incidental take, of any special status species" and requires Mr. Sweeney to use "the appropriate protocols, as approved by [state enforcement agencies], to ensure that activities do not impact the beneficial use of preservation of rare and endangered species or violate the California or federal Endangered Special Act."); Commission Order at 19 ("[Defendants' actions] likely resulted in the illegal take of threatened or endangered species protected under the California and federal Endangered

4

Species Acts]. Because neither agency has authority to enforce the ESA, their tangential reference to the ESA does not change the fact that the agency orders were limited to enforcing state water quality regulations.

In its complaint, River Watch requests a different remedy. It asks the court to "[d]eclare defendants to have violated and to be in violation of ESA § 9 by conducting activities on the Property that modify and degrade destroy [sic] critical habitat of the [endangered species] thereby causing an illegal 'take' of said species." Compl. at 14:3-5. Although requests for declaratory relief do not alone satisfy the redressability requirement, River Watch pairs this request with one for injunctive relief directly tied to ESA compliance. *See* Compl. at 14:8-9 (seeking an "injunctive order enjoining defendants from continuing to maintain levee and land management practices on the Property that constitute a "take" of endangered species."); *id.* at 14:10-11 (seeking "an injunctive order requiring defendants to mitigate the harm caused to the [endangered species] by previous destruction of their critical habitat."). The state orders, which relate primarily to water quality compliance, do not preclude River Watch's requested remedies here regarding take of endangered species or critical habitat mitigation.

Although the state agency orders pertain to the same property targeted in this case, advance goals complementary to this case, and tangentially reference the ESA upon which this case is based, the state orders do not duplicate the requested remedies here. If this court finds ESA violations occurred, the scope of available injunctive relief may well surpass the water quality or wetlands restoration limitations within which the agency orders operate. The full extent of injunctive relief available under the ESA will be fully evaluated only after discovery uncovers whether, how and to what extent the designated critical habitat modifications have impacted the six species. River Watch's claims are redressable.

III.     MOOTNESS AND RIPENESS

Defendants also argue River Watch's claims are moot because the state agencies have ordered the relief River Watch requests here and at the same time are unripe because those agency orders are still subject to Mr. Sweeney's procedural challenges. Mootness asks whether the issues presented are still "live." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

5

Conversely, the ripeness doctrine prevents premature adjudication where there is no concrete impact upon the parties arising from a dispute. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) ("[R]ipeness is peculiarly a question of timing, designed to prevent the courts . . . from entangling themselves in abstract disagreements.") (citation and quotation marks omitted). The ripeness inquiry also asks "whether there yet is any need for the court to act." *W. Oil & Gas Ass'n v. Sonoma Cty.*, 905 F.2d 1287, 1290 (9th Cir. 1990). To be ripe, the issues must be "'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). Whereas the defendant bears the "heavy burden" of proving a claim is moot, plaintiff bears the burden to prove that claim is ripe. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Here, the plaintiffs' claims are neither moot nor unripe. Though "[r]elief from another tribunal can moot an action," *Sea-Land Serv. v. International Longshoremen's & Warehousemen's Union*, 939 F.2d 866, 870 (9th Cir. 1991), as discussed above, the agency orders did not fully redress River Watch's claimed injuries here. That the scope of the agency orders overlaps with River Watch's requested relief, and that defendants have chosen to comply with those agency orders, is not enough. To prove mootness, defendants have a "heavy burden to establish that there is no effective relief remaining for a court to provide.'" *In re Palmdale Hills Property, LLC.*, 654 F.3d 868, 874 (9th Cir. 2011) (quoting *In re Pintlar Corp.*, 124 F.3d 1310, 1312 (9th Cir. 1997)). A defendant's voluntary cooperation moots a claim only where subsequent events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). Defendants here have shown no such clarity. Indeed, the Supreme Court has dismissed a similar mootness argument where a defendant claimed that a federal suit was moot due to an ongoing state regulatory enforcement process. *Friends of the Earth*, 528 U.S. at 192-93 (explaining citizen suit not moot merely because defendants stopped the challenged conduct and complied with agency requirements; was not "absolutely clear that [the defendant's] permit violations could not reasonably be expected to recur[.]"). River Watch's claims are not moot.

Defendants contend the claims are unripe, for "[w]ithholding review here would not cause any direct and immediate hardship." Mot. at 16. But this argument pertains to the injury component of the standing doctrine; it does not pertain to ripeness. Defendants further contend that if "in the future some problem arises, River Watch can file then, when the issue is clear and concrete." *Id.* But the dispute is concrete now: Whether defendants' habitat modifications violated ESA's prohibition against a "take" of the listed species and how to fashion injunctive relief to mitigate the harm. This concrete question is ripe for review.

Neither of defendants' timing arguments warrant dismissing the complaint.

IV. <u>NECESSARY PARTIES</u>

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(7), arguing the two state agencies are necessary parties under Rule 19 but cannot be joined due to their sovereign immunity, and so the suit cannot proceed without them. Mot. at 12-14.

"'A motion to dismiss for failure to join an indispensable party requires the moving party to bear the burden in producing evidence in support of the motion.'" *Camacho v. Major League Baseball*, 297 F.R.D. 457, 460-61 (S.D. Cal. 2013) (quoting *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001)). The court's inquiry when faced with a Rule 19 motion involves three steps, but defendants here cannot meet the first: Defendants have not shown the agencies are "required" or "necessary" parties under Rule 19(a). *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). A party is necessary under Rule 19(a) only if (1) in the party's absence, the court cannot award complete relief; (2) the party has an inadequately represented interest in the action and resolving the action without it could impair or impede that interest; or (3) its absence may result in inconsistent obligations. *Id.*

Defendants contend all three scenarios apply here. They argue if this court were to order a remedy inconsistent with the state agencies' previously ordered remedies, Mr. Sweeney would have to negotiate or litigate with the agencies to avoid violating their orders, Mr. Sweeney would be subject to inconsistent obligations, and the court would impair the agencies' interest in the restoration and mitigation of Point Buckler. Mot. at 13. But defendants' contrived conflict

between the state agency interests and this case is speculative, and purely hypothetical. Wholly lacking from defendants' motion is any evidence or argument explaining how a judgment here could conflict with state remedies to a degree warranting dismissal for failure to join the agencies. *See* Mot. at 12-14. Given the complementary goals between this proceeding and the state proceedings, namely the enforcement of environmental protection laws, the outcomes are not likely to clash.

Because defendants have not met their burden of showing the state agencies are necessary parties, the court declines to dismiss the complaint for failure to join those agencies.

V. ABSTENTION

Lastly, defendants contend this court should abstain from deciding the case under the *Colorado River* abstention doctrine because "the [related] state court proceedings can adequately protect the rights of the federal litigants [here] . . . ." Mot. at 20 (citing *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976)).

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," including in cases involving parallel state litigation. *Colo. River*, 424 U.S. at 817. But under "exceedingly rare" circumstances, *Smith v. Central Arizona Water Conservation District*, 418 F.3d 1028, 1033 (9th Cir. 2005), "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" may counsel in favor of abstention. *Colo. River*, 424 U.S. at 813, 817 (alteration, citation and quotation marks omitted) ("Abstention . . . is the exception, not the rule."). *Colorado River* and its progeny provide an eight-factor analysis for determining whether abstention is warranted:

> (1) [W]hich court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011).

These factors are not a "mechanical checklist." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). Courts examine them in "a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21. Underlying this analysis, though, is a strong presumption against federal abstention. *Id.* at 25-26 ("[O]ur task . . . is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.") (emphases in original). Any doubt should therefore resolve against abstention. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

As applied to this case, the *Colorado River* factors discourage abstention. First, no court has assumed jurisdiction over any property in dispute, so there is no possibility parallel proceedings will inconsistently dispose of any property. *See, e.g.*, *Colo. River*, 424 U.S. at 819 ("[T]he concern . . . is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property."). This factor weighs against abstention.

Second, defendants have not shown litigating in federal court would inconvenience the parties or witnesses. Though defendants cite convenience to "counsel," counsels' convenience does not drive this analysis. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) (likening this factor to a *forum non conveniens* analysis; emphasis is on convenience to the parties and witnesses). River Watch requests this forum, and defendant Sweeney lives in Solano County, which is within approximately an hour's drive from this courthouse, traffic allowing. This factor weighs against abstention.

Third, defendants have shown no dire need to avoid piecemeal litigation. The general preference for avoiding piecemeal litigation is not alone enough to warrant abstention. *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991) (explaining any parallel proceedings involve the possibility of "conflicting results, piecemeal litigation, and some duplication of judicial efforts," which are the "unavoidable price of preserving access to . . . federal relief.") (citation and quotation marks omitted). Rather, exceptional circumstances and "clear federal policy" must show piecemeal litigation is

9

particularly problematic. *See Colo. River*, 424 U.S. at 813, 819 ("The clear federal policy evinced by [the McCarran Amendment[6]] is the avoidance of piecemeal adjudication of water rights in a river system."); *cf. Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 843 (9th Cir. 2017) (explaining district court "failed to identify any special concern counseling in favor of federal abstention, such as the "clear federal policy"); *United States v. Morros*, 268 F.3d 695, 706-07 (9th Cir. 2001); *Madonna*, 914 F.2d at 1369 ("this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation"). Unlike in *Colorado River*, 424 U.S. at 819, where there was a substantial danger of inconsistently disposing of critical water rights in a manner to trigger further litigation, defendants here have not shown such a grave risk of inconsistent outcomes. The state agency orders focus on local water quality enforcement; this case focuses on critical habitat protection as defined under the ESA and as it pertains to the six species. This factor weighs against abstention.

        The remaining factors also weigh against abstention. Because the ESA is a federal law, federal law provides the rule of decision here. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because the state proceedings are not enforcing the ESA, but rather only water quality and wetlands protection violations, retaining jurisdiction over this case will not encourage forum shopping. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (noting this factor assesses if state court could resolve all federal issues facing court). And because the state proceedings are not enforcing ESA, they may not adequately protect the litigants' ESA-based federal rights. *See Moses Cone*, 460 U.S. at 26 ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction.]"). And, finally, that the state proceedings involving the related actions began before this federal action was filed does not alter this conclusion. *Id.* at 21 ("[T]his factor . . . is to be applied in a pragmatic, flexible manner . . . . priority should not be measured exclusively by which complaint was filed first[.]"). It would create a perverse incentive if merely initiating a state administrative action for arguably similar

---

[6] The McCarran Amendment is a federal law Congress enacted in 1952 that waives the United States' sovereign immunity in suits concerning ownership or management of water rights. *Colo. River*, 424 U.S. at 800 (citing 43 U.S.C. § 666 (1952)).

10

1 | relief could prohibit a claimant from later filing a related action in federal court to vindicate uniquely federal interests. To the contrary, *Colorado River* abstention applies only under exceptional circumstances and when important federal policies so demand. No such circumstances or federal policies exist here. The court declines to abstain under *Colorado River*.

VI. <u>DISCRETIONARY STAY</u>

Alternatively, defendants ask that the court exercise its discretion to stay the case pending the agency proceedings' outcomes. *See* Mot. at 20. Before granting or denying a stay, courts should weigh competing interests that the stay might impact. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Such interests include "the possible damage" a stay could inflict, the "hardship or inequity" a party might suffer should the court refuse a stay, and whether the stay would simplify or complicate the issues, proof, or legal questions involved in the case. *Id.* (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55)).

Here, defendants have not shown a discretionary stay is warranted. To support their request, defendants state merely that "a stay would allow the state court to resolve all the many state law issues, which are intertwined with the single issue of federal law raised in this case" and "[t]here will be no harm to Plaintiff." Mot. at 20. But as detailed above, defendants overstate the overlap between this case and the state proceedings: The state proceedings will not answer the exclusively federal questions at issue here. Also, a stay could cause plaintiff harm: A stay would delay assessing what, if any, damage defendants have inflicted on the six species, and what remedies the ESA mandates in the face of such damage. This potential harm outweighs the inconvenience of allowing partially overlapping cases to proceed simultaneously. The court DENIES defendants' request to stay.

/////
/////
/////
/////
/////
/////

VII. <u>CONCLUSION</u>

The court DENIES defendants' motion to dismiss or to stay. Defendants' answer is due within fourteen days.

IT IS SO ORDERED.

This order resolves ECF No. 14.

DATED: September 22, 2017.

_____
UNITED STATES DISTRICT JUDGE